Counsel for plaintiffs in error, filed the following petition for a re-hearing, which ivas overruled.
The counsel for the plaintiffs in error, move for a re-hearing of this cause, on the question of the measure of the liability of Pearson, the principal and of Hickman, one of the sureties, to Mc-Curdy, the co-surety, who compounded with the creditor, and thus satisfied the debt.
The opinion delivered by the court, on this point, would establish principles of extensive operation, and introduce into our code, new rules, without the sanction of a single book of authority; and which, the counsel verily believes, arc contrary to the sense of society, and the consequent practice in the. country.
Portier, the only book cited by the court, is an elementary treatise on the Homan law, as it prevailed in France, the author did not know the laws of England nor Kentucky, nor profess to treat of ou'r system. And therefore, his book is of no authority to prove the laws of this land. But an examination of the civil law of obligations, will show that the doc-> trines cited by the court from that author, are whol *565 ly inapplicable to the obligations and liabilities of sureties to their principal, and each other, under our code of law; and that the introduction of the civil law rules laid in the opinion, would effectually mar the security of our system. '
According to the civil law, the obligations of the principal and surety, are not joint but several only, as we would term it; and moreover, that of the principal debtor is regarded as the principal, in the language of the school men, and that oí the surety an accessory obligation; and the surety cannot be subjected to the payment of the money until the principal has been, in our language, prosecuted to insolvency. It results from the character of the obligations of the parties, that the surety, under the civil law, not jointly bound with his principal, mav just as well purchase up the obligation of his principal, as any stranger to the matter, and proceed against him, with all the rights, and by all the means, the original creditor might. And in consequence of the ultimate liability of the sureties, in case of the insolvency of the principal, the law gives him rights a stranger has not; he may pay the money to the creditor, who might not be willing to sell and assign his debt, and thereupon demand an accession of liis action, and thus obtain the subrogation to all the rights and actions of the original creditor.
But the nature of our joint obligations of the principal and surety, to the creditor, makes the operation of accession, and subrogation, legally impossible. When one of a plurality of joint obligors, pays the debt, the debt is extinguished and the obligation gone forever; and there can be no accession to that which is extinguished and has ceased to exist. A joint obligation is “an unit,” and consequently cannot exist as to one obligor, and remain in force as to the others. A release or extinguishment by any other means, oreven a suspension of the obligatory force of an obligation, for a day, as to one of the parties, nullifies the whole obligation as to all the obligors forever. These are first principles of the common law of obligations, and no authority is necessary to prove them. They necessarily result from the nature of *566 the subject, and are proved, if proof were necessary', by the most certain logical deductions. J °
But see here, in one case, the obligation of Pearson and his sureties, were all made joint, by.the law authorizing the recovery of one judgment, on the ■negotiable note, against, all the parties, and the actual recovery of the judgment, which extinguished the obligations on the note; and the obligations of the sureties were originally, joint and joint only, and moreover the one judgment was against all, the principal and all the sureties.
Wc would, therefore contend, that it was always Impossible for McCurdy to have purchased the debt on Hickman, or to have stipulated- for an accession of the rights of the creditor, or to have obtained a subrogation by any means whatever, without doing violence to all the principles of the common law; and as to Pearson, the operation could not have been effected after the judgment which merged the obligations of all the defendants recovered against, and made their liability joint and joint only.
The counsel are aware, that the court have determined that, the case made out did not come within the principles above combatted; but the court has laid down the doctrine in such terms, that it could actually be regarded as a rule in subsequent cases; and the counsel wouldsay, with the Barrons of England, “in nothing let the law of Kentucky he altered by the civilians;” and the court seem to have been conducted to the ground, on which the case is decided, by the civil law7 doctrine.
The ground of the opinion will he now discussed. McCurdy compounded the debt of Pearson for which he was bound as surety, and this debt only, fie did not compound bis own debt. His own debt was not a doubtful debt. It was not so considered by the parties, nor have this court so viewed it; it, Mc-Curdy’s own debt, was secured by a valid mortgage on a bouse and lot, of greater value, as the creditors considered it, and as the court valued it on the testimony, than the amount of his debt. We contend that it is unjust, that we should be charged, upon the same principles as if McCurdy had, in fact, com *567 pounded both the demands, as has been done in the opinion delivered. This, it is respectfully suggested, is the error of the opinion. It fully appears in the case, that the house and lot was the only fund out of which the creditors expected payment from anv of the parties; and had not this property been already pledged for the payment of McCurdy’s own debt, we would not have thought of denying his right to employ it in compounding both debts. But the property was already appropriated to his own debt, beyond his power of extricating it, and thus his debt was actually secured, and was a good debt, nota bad nor a doubtful debt.
The appropriation of the property to pay a good debt, for which it was already pledged, to the amount of that debt, and then, with the overplus, to compound a desperate debt, certainly ought not to be censtrned into a compounding of both debts. This being, in fact, the transaction, the form given, to it cannot be material. This principle the court-have, in substance, recognised in the opinion.
The doctrine here contended for may be illustrated by examples. Suppose McCurdy’s own debt to the Bunk had been secured by the additional obligation of undoubtedly solvent endorsers, or by a pledge of the stock of the Bank, by a third person, to any amount, and the Bank, merely to save the delay of an action, and the extraordinary expenses of the suit, had agreed to receive for the amount of his debt, and for that very doubtful debt for which he was bound with Hickman and others as surety for Pearson, tire twenty two hundred and fifty dollars in money, could it be said that both debts were compounded, and that McCurdy would be entitled to recover on that principle according to the rule laid down by the court?
Or suppose McCurdy had walked into the Bank and presented the cashier with $2,250 of notes on the institution itself, payable to his own order, and had assigned them to the cashier, in trust, to pay his own debt ; that it afterwards appearing to the Bank that this was all the whole of the parties bound for both of -the debts were worth, they had agreed. *568 in order to save the expense of a suit and to close the matters, to receive that money in payment of all, and had done so — would Pearson, the principal, or the suercties, be liable for more than what the money paid exceeded McCurdy’s own debt ?
McCurdy is exactly in the same ground where he was when he had conveyed the house and lot to the Bank, by his new deed, in extinguishment of both debts, except that he holds Hickman’s bond for the balance of the price of the house. Now, how will this matter be settled ? I would say Hickman ought to have a discount, out of his bond, for McCurdy’s one third of the amount of the bond, because the bond is for exactly the sum Hickman paid for Pearson’s debt. But if I could contend for Hickman, as McCurdy now does for himself, that the $2,250 was advanced by him to the Bank for both debts, at the same discount, then I might insist that he had paid about fifty per cent, on the surety debt, and purchased the mortgage debt at the same discount. And would this be right ? Certainly it would be, if the rule laid down by the court be correct. But McCurdy would answer, that Hickman had paid only the difference between McCurdy’s own debt and the $2,250 for the Pearson debt, as Hickman now contends; and Hickman could not deny that such was the fact. He was sure of recovering the amount of McCurdy’s debt when he made the purchase, because the house was bound.
And how can McCurdy now, in the present case, deny that he did first pay his own debt with the house and lot, which its whole weight rested upon?
But what would be the measure of Hickman’s recovery, in the above case, against Taylor, the third co-surety, and against Pearson ?
One father enquiry on this supposed case, and we leave it. Can McCurdy now say he was less benefitted by7 his extinguishment of his own debt in the transaction with the Bank of Kentucky than Hickman would have been by the purchase of that debt ?
Suppose I mortgage ten thousand dollars worth of property to my creditor, to secure the payment of my own debt of that amount; and at the same time *569 mortgage a senarate tract of land, to secure another debt for $5,000, for which I am bound, as the surety of an insolvent debtor, to the same creditor; and afterwards, the property, I had thus mortgaged, falls in value, until the whole is worth but $9,000, and I become insolvent, so that the creditor can hope for payment from no other source but the sale of the property, and therefore wishes to obtain immediate possession, and avoid the expenses of a suit; and it is therefore agreed between me and the creditor, that I shall release mv equity of redemption in the whole property, or, which is the same thing, make a new absolute deed ; and that, in consideration thereof, satisfaction shall be entered for both debts ; and it is all done : — could I, in conquence, in a court of equity, or any where else, demand a decree against my unfortunate principal for three thousand dollars, to be played over his head the balance of his life ? Could t, who had thus paid off to my creditor my own debt, with a loss to him of ,at least two thousand dollars, and satisfied both debts with less than I owed myself, thus speculate on my own compounding of my own debt; and in this way turn the loss my creditor suffered into mv gain, on an account against my debtor ? 1 had pledged but one thousand dollars worth of property for the debt I was bound for as surety, and the property I pledged for my own debt, was two thousand dollars short of being sufficient, and this-sum my own creditor loses, besides his loss of the greater part of the other debt; but I contrive to gain exactly the $3,000 in the operation, besides getting off mv own debt at the discount. And can this be called a ufair business trans~ action9 No. It is impossible. But let ns enquire more closely into the principle of this matter. On what ground could I assert the claim ? The last 'contract with the bank was, it is true, an unit — one ■operation — one sale of my property ; and if I had before made no mortgage whatever, but had held the property all free, with the title in my own h inds, to dispose of as I pleased, anti had made the sale to my creditor of the whole property for a full release of both these debts, then theve would . have been some ground for my claiming of my *570 principal the three thousand dollars. In this case, both debts being equally secure to the creditor, or rather insecure, the supposition might be, that ouch debt may, have been compounded at the same disconnt< j mnst, however, say, that in my opinion, there is still an objection to the claim, which no honest man could get over, ami that is this — in order to support it, we have to give to the transaction a form and effect contrary to the common and proper feeling of mankind, by which every one is hound to apply his property to the payment of his own debt in preference to that for which he is bound as surety. If I bad, as in the case put, applied my property on my own debt, I would have lost nothing hy paying it all for a release of that only ) and I would therefore say, it would not be honest or honorable in me to say I had applied the property equally t© both the demands. But I will not pursue this matter. Perhaps, where all the property paid was free of incumbrance, and each debt was equally secure, or insecure, the court might compel the principal to contribute pro rata. But that was not the case. My property was already bound, and beyond my control, except the worthless equity of redemption, which I gave up. On each of the two mortgages I yield two noughts ; and for that, I claim two thousand dollars. And is this correct aritlunatic? Not among-the solvent men ? And the rules of mathematics, at least, are the same for all. The plain truth is, Host nothing in the transaction but the property I mortgaged to secure the payment of the debt I was bound for as surety. This was all I applied to my principal’s use. — - Bui suppose, in the stead of the two mortgages, I had given but one on eleven thousand dollars worth of property, and had stipulated that the proceeds -should be applied, first, to the payment of my own debt, and afterwards to the other debt, and I had subsequently sold the property to the creditor, or any other, for this sum, and it had been applied accordingly — What then ? Or suppose I had made the mortgage to secure my own debt only, and had afterwards released the equity of redemption-, in consideration of an acquittance from both the debts, my own of f10,000, and the surety debt *571 of #5,000 — is not the case the same exactly, in principie, as that stated next above ? In that case, the mortgage was for both debts — mine to have the preference ; whilst in this case, the mortgage having embraced my own debt only, it of course had the preference to be first extinguished-by the proceeds of the-sale- It is too plain: and this is the case under dis-_ cussion.
The error, in the opinion delivered by the court, is in the omission to enquire into the amount Mc-Curdy.parted with for Pearson and Hickman’s use. McCurdy did not part-with the legal title to the property. in order to satisfy Pearson’s debt, but only his - equity, of redemption.
Suppose this had been sold under an execution^ on the judgment recovered by the bank against'| Pearson and his sureties; and suppose it had sold for j Its-exact value, the difference between McCurdy’s - debt'and the #2,250, how much would McCurdy have been entitled to recover ? Certainly not more than the equity of redemption sold for : and can be entitled to recover more, because he himself sold exactly the samé interest in the same property, for exactly the same amount, for the same purpose.
We will- state another case. Suppose Hickman-had gone to the bank, and told the president that he could, by the assistance of his friends, raise a few hundred dollars in order to obtain a discharge, and that he would pay the bank #2,250 for a discharge against this surety debí, and an assignment of this debt upon McCurdy, and the bank liad agreed to-his proposition, and made the' assignment accordingly. Now, what would be the measure of Hickman’s recovery against McCurdy as the co-surety f Could he first have the-amount of McCurdy’s own debt he had thus purchased, first made for him out of the property,- and then turn ghout and say that both of the debts were equally bad, or doubtful, or-good, and that, therefore, he had bought them each-at the same discount; and that, therefore, McCurdy should contribute, as co-surety, by the rule the court have given us, to work out Hickman’s liability j? Hickman, by his purchase of the debt on McCurdy, *572 become the assignee of the mortgage, and of course! entitled to the mortgage debt out of its value. Suppose then-he proceeds with the suit in chancery the hank had on the docket, and the house and lot is g0]¿ for the ^2,250, and Hickman purchased it himself. Now, how is the matter to be settled ? Hickman is exactly even. He paid $2,250, and has that value of property, except that he had given a bond, .when purchased at the commissioner’s sale, for the difference betweett McCurdy’s own debt, secured by the mortgage, and the $2,250.
One more case only.
Suppose I am insolvent; that I am bound to one' creditor, in two several obligations, and for one hundred dollars; in one as the surety for an insolvent man, and in the other for a person entirely solvent, but the person absent, and the creditor wants th$ money, and I have the credit to borrow, upon my pledge to restore it when reimbursed by my principal; and the creditor proposes that if I will pay him one hundred dollars, he'will surrender to me both Obligations, and 1 obtain the money and pay it. — * Shall my solvent} but unprincipled principal be allowed to tell me, on his return, that I compounded both debts, and had paid for his debt but fifty dollars, and I am sued, therefore, for the other half the money, after my insolvent principal.
This case is put to shew, that in all such cases the court must ascertain what portion of the money was paid for each debt, and there is rió more difficulty in it than there is in the case oforé of your fraudulent retailers Of spirits, who sells Ms apples and gives away his whiskey.
The court have recognised the principle which this petition labors to establish, in having itself valued the house and lot on the testimony, instead of taking the nominal amount pt which it was “ called” by the Bank and McCurdy in their settlement. If the value of the thing itself, the entire estate in it, is-the proper criterion, when it is all paid by the surety in satisfaction of the debt, surely, when only an equity of redemption is paid, the real value of that ought to be the standard.
*573 ^ will not add to this long paper by an apology for i,ts length. If I am wrong, there can be no good apology ; and if I am right, none is necessary.
MOÑROE.